UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YELITZA PICON,,

    Plaintiff,

vs.                                                                                                    Case No.: 1:24-cv-6936

Home Depot Product Authority, LLC,

    Defendant.

_____/

**Declaration / Report of Robert D Moody**

I, Robert D. Moody, declare that I have read the preceding instrument, and the facts and information stated in it are true and correct to the best of my knowledge. I am personally acquainted with the facts stated herein.

1. I am the President, CEO, and Founder of Forensic Data Services, Inc. (d/b/a FDS Global) (hereafter referred to as FDS), a company based in Broward County, Florida.

2. The Law Firm of GABRIEL A. LEVY, P.C., retained by my firm (FDS) for the benefit of its client, YELITZA PICON,.

3. The Plaintiff, YELITZA PICON,, has established that she is visually impaired and asserts her rights under the Americans with Disability Act (ADA).

4. I have been retained to provide consulting services, including website auditing, which includes compliance, usability, and accessibility standards (WCAG 2.0), as well as general functionality analysis for disabled users.

5. My duties with FDS include being the principal investigator and testifying expert.

6. My compensation is set at the hourly rate of $450 per hour for technical work and $750 per hour for testifying and preparation for testifying.

7. My compensation for my consulting services and the generation of this Declaration / Report is capped at $2,500.00. All other consulting work and all testimony will be at the above rate.

8. I am certified in Information Systems Auditing, Information Security, and Computer Forensics. Additionally, I have received training relating to my work in this matter and provided my CV to fully describe my education, certification, training, and testifying background. My CV is attached as **Exhibit 1**.

9. Specific to websites and their functionality, I have experience in the design, layout, coding, auditing, and testing of functionality, security, and operability of websites and their content.

10. Regarding ADA Compliance, I have audited, directed, and directly supervised more than 5,000 websites to date. This work includes sites for all major industries operating on many different platforms.

11. My work has identified websites that were both WCAG-compliant and non-compliant with WCAG.

12. For the websites found to be non-compliant, defendants have often relied on my work to bolster their remediation efforts and effectively correct the issues they faced.

13. In the present matter, FDS, with me as the principal investigator, was retained by Plaintiff's counsel on behalf of Plaintiff, a visually impaired user of the Internet, to determine whether Home Depot Product Authority, LLC's website(s) had issues that could not be overcome and acted as barriers to their use and enjoyment of the website.

14. In this case, the Defendant's website consists of a single URL. The URL examined was:

    a. [https://www.thecompanystore.com/](https://www.thecompanystore.com/)

15. The Plaintiff alleges the following issues:

    A. Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help the Plaintiff effectively find the content of interest and understand the logical structure of the home page.
    B. Several links had ambiguous texts that were unclear to the Plaintiff. Lack of detailed description of the link target and destination page made it difficult for the Plaintiff to perceive their purpose.
    C. An Icon was used as link without appropriate alternative text. The Plaintiff was not informed about the purpose of the graphic icon.
    D. The Plaintiff was unable to activate several interactive elements using "enter" or "spacebar" keys. The only mechanism for viewing items was the mouse.
    E. Sub-menu elements with drop-down menus were inaccessible via keyboard. The Plaintiff could not interact with sub-menus using "tab" or "arrow" keys. The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users.
    F. The Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links.

16. I found that the issues identified by the Plaintiff did exist.

17. Additionally, the Defendant's website revealed the following issues:

    1. ARIA hidden element must not be focusable or contain focusable elements
    2. Elements must meet minimum color contrast ratio thresholds.
    3. Images must have alternate text
    4. Elements must have their visible text as part of their accessible name
    5. Links must have discernible text
    6. Interactive controls must not be nested
    7. ARIA role should be appropriate for the element
    8. Elements in the focus order should have an appropriate role
    9. Page should contain a level-one heading
    10. Elements must only use permitted ARIA attributes
    11. ARIA attributes must conform to valid values
    12. IDs used in ARIA and labels must be unique
    13. <video> elements must have captions
    14. CSS Media queries must not lock display orientation
    15. Hidden or empty element receives focus
    16. Focus indicator is missing
    17. Function cannot be performed by keyboard alone
    18. Role: The element's role is missing or incorrect
    19. Media file is missing text alternative
    20. The decorative image is not hidden from screen readers
    21. aria-hidden="true" is used incorrectly
    22. Image of text is used instead of real text

18. The 22 issues identified above point to specific problems with the Defendant's website. These issues include:

    A. Images are complex for visually impaired users to interpret because of the color contrast, aspect ratio, and lack of alternate text that a screen reader can read.

    B. Programming elements such as improper headings and ARIA statements make it difficult for assistive technologies to interpret the website and provide a fluid, meaningful interaction for the impaired user.

    C. The Defendant's website is not designed to permit navigation through the keyboard alone. This failure in design makes it difficult for impaired users to navigate the Defendant's website.

19. As stated above, FDS uses tools provided by Deque.com as part of its audit. These tools help the reader contextualize the seriousness of the issues by understanding their weight. The Deque Scorecard is presented below.

20. The Deque Scorecard identified **423 issues** and categorized them as follows:

| Critical | Serious | Moderate | Minor | Color Contrast | Other |
|---|---|---|---|---|---|
| 241 | 10 | 13 | 3 | 3 | 153 |

To better understand the categories provided above, the following descriptions are provided:

a. **Critical** - This issue results in blocked content for people with disabilities and will partially prevent them from accessing fundamental features or content. This type of issue puts your organization at risk.

b. **Serious**—This issue results in barriers for people with disabilities and partially prevents them from accessing fundamental features or content. As a result, people relying on assistive technologies will experience significant frustration.

c. **Moderate** - This issue creates barriers for people with disabilities but will prevent them from accessing fundamental features or content.

d. **Color Contrast**—This issue results from an organization not ensuring a proper ratio between the foreground and background of text and pictures. The correct ratio must be 4.5:1 for standard text and 3:1 for large text. Failure to meet this standard creates barriers for disabled users, especially visually impaired users.

e. **Other**—This issue identifies issues based on what has been determined as a best practice. When taken into account along with items a. through d., a minor problem could be elevated to a critical or severe barrier.

21. The issues listed above and referenced by the automated testing (**423 issues**) identify barriers that would prevent a disabled person from using and enjoying the Defendant's website. A more detailed report of the problems is attached as **Exhibit 2**.

22. Recipients are not required to take action that would constitute a fundamental alteration like a program or activity or an undue financial or administrative burden. As discussed in the NPRM, 137 and consistent with DOJ's 2022 guidance on web accessibility 138 and DOJ's recent proposed title II rulemaking, "Nondiscrimination based on Disability: Accessibility of Web Information and Services of State and Local Government Entities," 139 the Department does not believe that a phone line, even if it is staffed 24 hours a day, can realistically provide equal opportunity to people with disabilities. Websites and often mobile apps allow public members to get information or request a service within just a few minutes and usually to do so independently. Getting the same information or requesting the same service using a staffed phone line takes more steps, resulting in wasted time or difficulty getting the information.  In addition, a staffed telephone line may not be accessible to someone who is deaf or blind or may have a combination of other disabilities, such as a coordination issue impacting typing and an audio processing

disability impacting comprehension over the phone. However, such individuals may be able to use web content and mobile apps that are accessible.

**Conclusion:**

23. The issues identified by the Plaintiff involve design, logic, and structural flaws in the website.

24. As for FDS testing, the issues identified by the Plaintiff were found to exist and continue to exist today.

25. FDS testing shows numerous issues specific to WCAG, referenced in Exhibit 2.

26. Given all of the above and considering the issues identified, I can say with a high degree of scientific certainty that the website https://www.thecompanystore.com/ has defects. These defects serve as barriers that create problems for visually disabled persons and have a direct and immediate effective use and enjoyment of the site for persons with low to no vision. Furthermore, as found on the Defendant's website, these defects do not comply with WCAG 2.0/2.1.

27. I reserve the right to update, alter, change, delete, and supplement this declaration in the alternative file if provided with additional relevant material.

**DECLARANT FURTHER SAYETH NOT.**

Under penalty of perjury, I affirm that the preceding statements are true and correct.

*Robert D. Moody*
_____
**Robert D. Moody**
Rmoody@fds.global
Date:   08/22/2024